**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,** | |
| Plaintiff, | **Civil Action No. 6:20-cv-454** |
| v. | **Civil Action No. 6:20-cv-461** |
| | **Civil Action No. 6:20-cv-465** |
| **MICROSOFT CORPORATION** | **PUBLIC VERSION** |
| Defendant. | |

<u>**MICROSOFT CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF**</u>
<u>**BRAZOS LICENSING AND DEVELOPMENT'S MOTION TO EXCLUDE**</u>
<u>**TESTIMONY OF JEFFERY A. STEC**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ........................................................................................................... 1

   A.   Discovery Related to WSOU's Negotiations for the '160 and '702 Patents ...................... 2

   B.   Dr. Stec's Expert Report ................................................................................................ 3

      1.   The ███████████ .................................................................................................. 3

      2.   The ███████████ ................................................................................................. 5

III.  LEGAL STANDARD .................................................................................................... 7

IV.  ARGUMENT ................................................................................................................. 8

   A.   Dr. Stec's Analysis of the ██████████ is Admissible. ........................................... 9

   B.   Dr. Stec's Analysis of the ██████████ is Admissible........................................... 13

V.    CONCLUSION ............................................................................................................. 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple Inc. v. Wi-LAN, Inc.*,
 25 F.4th 960 (Fed. Cir. 2022) ..........................................................................................10, 11

*Biscotti Inc. v. Microsoft Corp.*,
 No. 2:13-cv-01015-JRG-RSP, 2017 WL 2607882 (E.D. Tex. May 25, 2017) ......................16

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993)...............................................................................................................7

*Ericsson, Inc. v. D-Link Sys., Inc.*,
 773 F.3d 1201 ...................................................................................................................7, 11

*Finjan, Inc. v. Secure Computing Corp.*,
 626 F.3d 1197 (Fed. Cir. 2010).............................................................................................13

*Guy v. Crown Equip. Corp.*,
 394 F.3d 320 (5th Cir. 2004) .................................................................................................7

*i4i Ltd. P'ship, Infrastructure for Information Inc. v. Microsoft Corp.*,
 598 F.3d 831 (Fed. Cir. 2010)...............................................................................................13

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.*,
 No. 2:17-CV-0661-JRG-RSP, 2019 WL 1877309 (E.D. Tex. Apr. 26, 2019)......................10

*Intuitive Surgical, Inc. v. Auris Health, Inc.*,
 No. 18-cv-1359, 2021 WL 3662842 (D. Del. Aug. 18, 2021).........................................14, 15

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
 694 F.3d 51 (Fed. Cir. 2012)...........................................................................................8, 13

*Nikolova v. Univ. of Texas at Austin*,
 No. 1-19-CV-877-RP, 2022 WL 443783 (W.D. Tex. Feb. 14, 2022) .....................................7

*Open Text S.A. v. Box, Inc.*,
 No. 13-cv-4910, 2015 WL 393858 (N.D. Cal. Jan. 29, 2015)..................................................15

*Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*,
 C.V. No. 12-1013-RGA, 2015 WL 456154 (Jan. 30, 2015).............................................12, 13

*Virnetx, Inc. v. Cisco Sys., Inc.*,
 767 F.3d 1308 (Fed. Cir. 2014)..............................................................................................11

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010)..........................................................................................14

*Zak v. Facebook, Inc.*,
    4:15-CV-13437-TGB-MJH, 2021 WL 4481588 (E.D. Mich. Sept. 30, 2021).......................10

**Rules**

Federal Rule of Evidence 702.....................................................................................................7

**LIST OF EXHIBITS**

| Dec. Ex. | Document Name | Document Abbreviation |
|----------|---------------|----------------------|
| Ex. A | Excerpts of the Rebuttal Report of Jeffrey A. Stec, Ph.D., dated March 1, 2022, including Exhibits 1 and 2 | Stec. Rept. |
| Ex. B | Excerpts of the Patent Purchase Agreement, effective July 22, 2017 | PPA |
| Ex. C | Assignment of Patent Purchase Agreement, effective August 21, 2017 | PPA Assignment |
| Ex. D | Transcript of the Discovery Hearing on September 7, 2021 | Sept. 7, 2021 Discovery Hrg. |
| Ex. E | Transcript of the Discovery Hearing on October 7, 2021 | Oct. 7, 2021 Discovery Hrg. |
| Ex. F | Excerpts of Appendix A to the Rebuttal Report of Jeffrey A. Stec, Ph.D., dated March 1, 2022 | Stec Rept., Appendix A |
| Ex. G | Excerpts of Appendix B to the Rebuttal Report of Jeffrey A. Stec, Ph.D., dated March 1, 2022 | Stec Rept., Appendix B |
| Ex. H | Excerpts of Rebuttal Expert Report of Alan DeKok Regarding U.S. Patent No. 7,106,702, dated March 1, 2022 | DeKok Rebuttal Rept. |
| Ex. I | Excerpts of Appendix A – Azure Patents ('160 and '902 Patents) to the Expert Report of Justin R. Blok and Walter Bratic, dated February 1, 2022 | Blok Rept., Appendix A |
| Ex. J | Valuation Report ███████████ ████████████████ ██████ | |

## I.      INTRODUCTION

The Court should deny WSOU's motion to exclude testimony of Microsoft's damages expert, Jeffery A. Stec; there is no basis to exclude his testimony.  Dr. Stec's analysis of licenses that include the patents-in-suit is reliable and will be helpful to the trier of fact in making the damages determination in this case.

In seeking to exclude Dr. Stec's testimony, WSOU mischaracterizes his opinions and seeks to impose an unspecified, legally unsupported standard for establishing the comparability of licenses in a damages analysis.[1]  Additionally, WSOU improperly faults Dr. Stec for purportedly failing to consider certain information related to WSOU's licensing negotiations, after arguing during discovery that the content of negotiations is irrelevant in this case, and the only relevant information from WSOU's license agreements can be found on the face of the agreements themselves.  In any event, WSOU's challenges to Dr. Stec's report go to the weight of his opinions—not their admissibility.

## II.     BACKGROUND

In these related cases, WSOU alleges that Microsoft infringes three patents (collectively, the "asserted patents" or "patents-in-suit"):  U.S. Patent Nos. 7,366,160 ("the '160 patent"), 8,274,902 ("the '902 patent"), and 7,106,702 ("the '702 patent").  Specifically, WSOU alleges that "Microsoft infringes the '160 and '902 Patents . . . by making, using, selling, offering for sale, importing and/or distributing Microsoft's Azure Monitor and other network monitoring solutions (e.g., Network Watcher, Network Performance Monitor ('NPM')) . . . which primarily

---

[1] WSOU refers to Dr. Stec as Mr. Stec throughout its motion. Dr. Stec received a Ph.D. in Economics from the Ohio State University. Dr. Stec's credentials are summarized in his expert report.  *See* Stec Rept. at 3 & Exs. 1, 2.  Dr. Stec is well qualified to provide expert testimony that will be of service to the factfinder in this matter.

service customers of Microsoft's Azure platform." Dkt. 134 at 2.[2]  WSOU accuses Microsoft's

Network Policy Server ("NPS"), a feature of Windows Server that "performs centralized

network access authentication, authorization, and accounting [("AAA")],]" of infringing the '702

patent.  *Id.*  Specifically, NPS is Microsoft' implementation of a RADIUS server.  The RADIUS

protocol is a common AAA protocol, and a RADIUS server (which would run according to the

AAA protocol) is an example of a AAA server.

### A.    Discovery Related to WSOU's Negotiations for the '160 and '702 Patents

In July 2017, third-party Wade and Company ("Wade") entered into a Patent Purchase

Agreement ("PPA") with Alcatel Lucent, Nokia Solutions and Networks BV, and Nokia

Technologies Oy (collectively, "Nokia").  Documents appended to the PPA contained specific

assignments by Nokia to Wade, including the '160 Patent and the '702 Patent.  (PPA, WSOU-

MICAL-0000246-247, -253 (identifying the '160 Patent), -359 (identifying the '702 Patent).)

On August 21, 2017, Wade assigned to WSOU Wade's interest in the PPA (the "PPA

Assignment").  This assigned WSOU rights in the PPA—specifically, "Wade and Company

hereby assigns to WSOU Investments LLC and WSOU Investments LLC hereby accepts the

whole of the interest of Wade and Company in the Patent Purchase Agreement."  (PPA

Assignment, WSOU-MICAL-0000932).

The PPA and amendments thereto 

---

[2] Unless otherwise noted, citations herein are to the docket in Case No. 6:20-cv-00454.

██████████████████████   ████████████████████████████

referenced in the PPA, it redacted ███████████████ that described negotiations.  (Oct. 7,

2021 Discovery Hrg., 50:8-51:14); Dkt. 104 at 3 ("WSOU shall provide written verification to

Microsoft that every redaction ████████████████ was made because those redacted

portions describe negotiations.").

**B.      Dr. Stec's Expert Report**

In rebutting WSOU's damages experts' opinions, Dr. Stec evaluated numerous arm's

length licenses to the patents-in-suit, including the ███████████ and ██████

████████ at issue in WSOU's Motion.  *See* Dkt. 134 at 3-5.[3]  Both the ████████████

and the ███████████   ██████████████████████████████████

████████████████████████  As described below, Dr. Stec performed a

thorough analysis supporting his opinions of technological and economic comparability of these

licenses to licenses that Microsoft would obtain through a lump-sum payment via hypothetical

negotiations for the patents-in-suit.

**1.**       ████████████████

Dr. Stec's report acknowledges that the █████████████████████

████████████████████████████████████████

████████████████████████████████ (Stec

Rept., Appendix A at 39 (citing WSOU-MICAL-0004311.xlsx).)  Among other things, Dr.

Stec's report details the products and services that were licensed under the ██████████

---

[3] Contrary to WSOU's assertion, Dr. Stec did not "prepare[] two expert reports for his damages analysis." Dkt. 134 at 3.  He served a single expert report with two appendices, just as WSOU's damages experts did.

[4] ████████████████████████████████████████████
████████████████████████████████████   ████████

certain rights ███████████████ under the agreement, the duration of the license, and the █████████████████████████████████████ ████████████████████████████████ (*See id.* at 39-40.)

Dr. Stec also evaluated the ███████████████ "for technical comparability and economic comparability." (*Id.* at 43)  He determined that because the ███████████████ ████████████████████████████████, "the technology licensed by Microsoft at the hypothetical negotiation would be identical to, although a subset of, the technology licensed by █████████████████████ (*Id.*)  As part of the technical comparison between the ███████████████ and the hypothetical license, Dr. Stec's analyzed ███████████████████████████ and compared this product to the accused Azure Monitor.  (*Id.* at 45.)

In analyzing the economic comparability of the ███████████████, Dr. Stec evaluated the timing of the agreement and "whether any material market developments would have occurred" between the date of the hypothetical negotiation and the date of the ████████ ████████.  (*Id.* at 44.)  Dr. Stec's evaluation included consideration changes in the relevant market shares of ████████ and Microsoft and a comparison of ████████ competing monitoring service with Microsoft's accused Azure Monitor.  (*Id.* at 44-45.)  Based on his analysis, Dr. Stec opined that "it is reasonable to conclude that ██████ has similarities in both the types of products and competitive landscape as Microsoft. As a result, both from a technical and economic standpoint, the license agreement █████████████████████ serves as a reasonable benchmark for the hypothetical license agreement that would result from the hypothetical negotiation between WSOU and Microsoft." (*Id.* at 45.)

Beyond this baseline analysis of technological and economic comparability, Dr. Stec went on to "provide further economic analyses in the context of the other *Georgia Pacific* factors to determine whether differences exist between the ██████████████████ and the hypothetical license agreement between WSOU and Microsoft." (*Id.* at 45-46; *see also, e.g.*, *id.* at 50-51 (describing differences in periods of licensed use of the '160 and '902 patents between ████████████ and license Microsoft would obtain from the hypothetical negotiation), 56-57 (describing difference in scope of intellectual property licensed under ███████████ and license Microsoft would obtain from the hypothetical negotiation).)  Based in part on this comparability analysis, Dr. Stec reached his opinion that "the outcome of the February 2017 hypothetical negotiation would be a ████████████████████████████████████████████ ██████████████ (*Id.* at 62.)

**2.**    ████████████████████

Dr. Stec's report states that ██████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ (Stec Rept., Appendix B at 28.)  Dr. Stec addresses the ████████████ in a similar fashion as the ████████████, describing the products and services that were licensed under the ████████████, certain rights ██████████████████ under the agreement, the duration of the license, and ████████ ████████████████████████████████████████████████████ ██████████████████████ (*Id.* at 35.)

In determining that the ████████████ is comparable to a hypothetical license to the '702 patent, Dr. Stec relied in part on the technical opinions of Microsoft's technical expert, Alan DeKok, (*see, e.g.*, *id.* at 40-41), who opined that among licensees to the '702 patent, ████ ██████████████████████████████████████ (*Id.* at 40 (citing

DeKok Rebuttal Rept., ¶ 96).)  Based on the expert opinions of Mr. DeKok,[5] Dr. Stec's technical comparability analysis includes discussion of the specific use and applications of the '702 Patent by ███ and Microsoft based on the authentication, authorization, and accounting ("AAA") functionality they provide.  (*See id.* at 40-41, 50, 53, 55, 58, 88-89.)  For example, in addition to his reliance on Mr. DeKok's analysis and opinions, Dr. Stec considered ███ publicly available information which affirms its use of the RADIUS servers. (*Id.* at 40-41.)

As he did for the ███████████, Dr. Stec undertook an analysis of economic comparability for the ███████████.  In doing so, Dr. Stec "attempted to identify the portion of ███ business that is most closely aligned with the use of RADIUS server and associated AAA offerings."  (*Id.* at 41.)  Dr. Stec also "evaluated relevant considerations for comparing ████████████████ and Microsoft, acting as licensee, at the time of the hypothetical negotiation with Alcatel-Lucent."  (*Id.* at 42.)  This entailed consideration of ███ revenues and net income, as well as the strength of its patent portfolio.  (*See id.*)  Dr. Stec's economic comparability analysis also included consideration of differences between the negotiations for the ████████ and the hypothetical negotiation, such as █████████████████████████ ███████████████████ (*Id.* at 43 (citing Blok Rept.), Appendix B, ¶ 78).

---

[5] Mr. DeKok personally developed the FreeRADIUS technology (DeKok Rebuttal Rept., ¶ 106). Mr. DeKok has also provided invalidity and non-infringement reports addressing the '702 Patent. Mr. DeKok is thus, well positioned to comment on how an entity such as ███ would have used the RADIUS servers, AAA, as well as its potential use of the claimed inventions in the '702 Patent. Dr. Stec's reliance on Mr. DeKok's expert opinions of technical comparability is appropriate.

Based on his analysis, Dr. Stec concluded that "███████████ offers a technically and economically comparable benchmark against which the outcome of the hypothetical negotiation can be evaluated." (*Id.* at 44.)

## III.   LEGAL STANDARD

WSOU does not challenge Dr. Stec's qualifications or the relevance of his opinions. WSOU only challenges Dr. Stec's opinions as purportedly unreliable.

Under Federal Rule of Evidence 702, a qualified expert "may testify ... in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting FED. R. EVID. 702). Because the Rule 702 inquiry "focuses on the underlying theory on which the opinion is based, the proponent of expert testimony need not prove that the expert's testimony is correct, but rather that the testimony is reliable. *Nikolova v. Univ. of Texas at Austin*, No. 1-19-CV-877-RP, 2022 WL 443783, at *2 (W.D. Tex. Feb. 14, 2022) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "[T]he rejection of expert testimony is the exception rather than the rule." FED. R. EVID. 702 advisory committee notes (2000 amendments). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

The Federal Circuit "has recognized that licenses may be presented to the jury to help the jury decide an appropriate royalty award." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014 (citations omitted). "Prior licenses, however, are almost never perfectly analogous to the infringement action." *Id.* (citing *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308,

1330 (Fed. Cir. 2014). "Recognizing that constraint, however, the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Id.* (citations omitted); *see also Virnetx*, 767 F.3d at 1330 ("we have never required identity of circumstances; on the contrary, we have long acknowledged that any reasonable royalty analysis necessarily involves an element of approximation and uncertainty.") (internal quotation marks and citations omitted)).

In *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), the Federal Court noted that "[a]ctual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because *such actual licenses most clearly reflect the economic value of the patented technology in the marketplace*." *Id.* at 79 (emphasis added).

## IV.    ARGUMENT

WSOU argues that Dr. Stec's analysis is unreliable because he allegedly "offers no analysis about the license amount he took from unrelated agreements" and "fails to account for the numerous economic differences in the hypothetical license and the ███████████ ███████" Dkt. 134 at 7. These assertions are belied by even a cursory review of Dr. Stec's report, as set forth above. Without setting forth any applicable standard for what an expert must do to demonstrate that a license is sufficiently comparable, WSOU asserts in conclusory fashion that the ███████████████████ are not comparable. *See id.*

Tellingly, WSOU argues that it is "important[]" that ████████████████████ ████████████████ licensed under the agreements that Dr. Stec contends are comparable. *See id.* at 3, 4. In reality, this is entirely unremarkable. As the Court is undoubtedly aware, it is extremely uncommon for arm's length license agreements to allocate the royalty payment on a per patent basis. In his report, Dr. Stec attributes the lump sum payments taken

from comparable licenses to only the patents-in-suit.  If any of the other patents in the
agreements have value, this is a conservative approach.  If none of the other patents in the
agreement have value, this is correctly attributing the value to the patents-in-suit.  WSOU
appears to suggest a new standard for license comparability, requiring the royalty to be
apportioned on a per-patent basis within the license agreement itself.  Under WSOU's proposed
standard it would be all but impossible for arm's length license agreements to be relied upon as
evidence of an appropriate royalty unless the arm's length agreement set forth the payment
amount allocable to each licensed patent on a per patent basis.  As the Court is no doubt aware,
parties to arm's length patent license agreements would have no incentive to burden themselves
with such an undertaking.  There is no support in the law for WSOU's proposed standard, and
indeed WSOU offers none.

Ultimately, the probative value of the licenses on which Dr. Stec relies is a matter for the
jury to decide, and, as discussed below, WSOU's own cited case law confirms that its criticisms
of Dr. Stec's opinions on the ███████████████████ go to the weight of his testimony,
not admissibility.

**A.  Dr. Stec's Analysis of the ██████████ is Admissible.**

As described above, Dr. Stec's report acknowledged ████████████████
████████ while including an analysis of its technological and economic comparability.  Thus,
WSOU's first argument, that "Mr. Stec did not opine as to how the █████████ is
technologically comparable to the hypothetical negotiation between Nokia and Microsoft[,]" is
plainly false.  Dkt. 134 at 7.  Dr. Stec specifically opined that "the technology licensed by
Microsoft at the hypothetical negotiation would be identical to, although a subset of, the
technology licensed by ██████" because the ████████████████████████
████████  (Stec Rept., Appendix A at 43.)  Dr. Stec also undertook an extensive analysis as

to the economic comparability of the ██████████████, considering the timing of the agreement, material market developments between its execution and the time of the hypothetical negotiation, and the competitive relationship between █████ and Microsoft in the cloud computing sector.  (*Id.* at 44-46.)  Moreover, WSOU's damages experts' report acknowledges that ███████████████████████████████████████████████████████ ████████████████████████████ followed by Microsoft Azure.  (*See* Blok Rept., Appendix A, ¶ 30.

That the ████████████████████████████████████ ████████████████, which is the sole focus of the hypothetical license between Nokia and Microsoft" is not a basis for exclusion of Dr. Stec's opinions.  Dkt. 134 at 7-8.  Indeed, courts routinely reject WSOU's exact argument.  *See, e.g.*, *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-0661-JRG-RSP, 2019 WL 1877309, at *6 (E.D. Tex. Apr. 26, 2019) (rejecting argument that testimony on comparable transaction should be excluded because that transaction involved "a license for thousands of patents, the vast majority of which [the expert witness] does not assign value," and explaining that "such arguments should be reserved for cross-examination at trial."); *Zak v. Facebook, Inc.*¸ 4:15-CV-13437-TGB-MJH, 2021 WL 4481588, at *3 (E.D. Mich. Sept. 30, 2021) (denying motion to exclude expert testimony and rejecting movant's argument that expert "inappropriately compared the several patent families acquired in the . . . transaction to the single patent at issue here") ") (internal quotation marks and citations omitted).  WSOU's appeal to *Apple Inc. v. Wi-LAN, Inc.*, 25 F.4th 960 (Fed. Cir. 2022) on this point is unavailing.  *See* Dkt. 134 at 11.  In *Apple*, the Federal Circuit held that a *plaintiff's* expert's damages methodology was flawed where the expert opined that an asserted patent, which was "easily lost in a schedule listing hundreds of Non-Asserted patents[,]" was a

"key patent." *Apple*, 25 F.4th at 973.  By treating the asserted patent as a "key patent" without supporting evidence, the expert overstated its value in favor of the plaintiff.  There is no equivalent concern here.

WSOU also attempts to distinguish the ▮▮▮▮▮▮▮▮▮ from the hypothetical license by relying on testimony of its CEO, Craig Etchegoyen, regarding WSOU's alleged state of mind regarding the extent of ▮▮▮▮'s use of the technology at issue in the ▮▮▮ Agreement.  *See* Dkt. 134 at 8 ("[A]s Mr. Etchegoyen stated, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮.[6]  As an initial matter, this directly contradicts the representations of Mr. Etchegoyen cited in WSOU's damages expert report, which states that ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Blok Rept., Appendix A, ¶ 74 (citing Interview of Mr. Etchegoyen).)  More importantly, WSOU provides no basis for why this alleged difference in circumstances surrounding the ▮▮▮▮▮▮▮▮ warrants exclusion of Dr. Stec's relevant opinions; it does not.  *See Ericsson*, 773 F.3d at 1227; *Virnetx*, 767 F.3d at 1330.  Rather, any purported difference in licensing circumstances is most appropriately evaluated by weighing the evidence and through cross-examination.

---

[6] WSOU seeks to support Mr. Etchegoyen's purported belief as to ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ Dkt. 134 at 8.  This is misleading as the ▮▮▮▮▮▮ does not focus on the cloud computing industry ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* WSOU-MICAL-0003108-155 at 115.

The same is true of WSOU's assertions of differing economic circumstances between the parties to the hypothetical negotiation and the parties to the ███████████. *See* Dkt. 134 at 9-10.  WSOU concedes that Dr. Stec's report "provides examples of how the ████████ ████████differs from the hypothetical agreement," but argues that Dr. Stec "does not explain how his methodology *accounts* for these differences." Dkt. 134 at 9 (citing *Virnetx*, 767 F.3d at 1330).  WSOU is incorrect.  Dr. Stec's report discusses the relevant differences between the ████████████ and the hypothetical license throughout his analysis of the *Georgia Pacific* factors, and Dr. Stec adjusted his opinion as to the appropriate payment amount accordingly. (*See, e.g.*, Stec Rept., Appendix A at 57 (explaining how "the differences in cloud computing market share between ████████████ and Azure and the differences in scope of the ████████████ and the license that Microsoft would receive from the hypothetical negotiation would support a downward adjustment of the baseline payment"); *see also id.* at 61 ("There are, however, some differences that need to be accounted for in determining the royalty payment amount.  As noted earlier, the period of Microsoft's licensed use would be shorter than ██████████ licensed use. Accounting for this and other considerations discussed below and throughout my report, would result in █████████████████████████ ████████").[7]

WSOU's cited case law supports Microsoft's position.  In *Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, C.V. No. 12-1013-RGA, 2015 WL 456154 (Jan. 30, 2015), in excluding four licenses as not sufficiently comparable to the hypothetical licenses, the court

---

[7] WSOU asserts that it "faced unique business risks that Nokia would not have faced in the hypothetical negotiation[,]" Dkt. 134 at 11, but certain of the risks it identifies are present in most, if not all, non-settlement licenses.  *See id.* at 11-12 (listing "uncertainty of patent validity and infringement" and "disparate bargaining positions."

expressly relied on the fact that "all of the agreements license a number of patents, *all of which are not in suit*.") (emphasis added).  *Sprint*, 2015 WL 456154, at *2.  Here, the ███████ █████████████████████████████████████████████.  Similarly, in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), the Federal Circuit held that comparability between certain licensing programs and the hypothetical license was absent where the licensing programs "did not involve" the asserted patent.  *Id.* at 80.  Moreover, the Federal Circuit held licenses to the patents-in-suit were "highly probative of the patented invention's economic value in the marketplace, and of the form that a hypothetical license agreement would likely have taken."  *Id.*  Thus, *LaserDynamics* supports Dr. Stec's opinion that the ████████ ████████ is a comparable license.

Finally, WSOU cites *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) for the proposition that an expert must account for "differences in the technologies and economic circumstances of the contracting parties," including consideration of whether the license at issue arises under comparable circumstances as the hypothetical negotiation.  *See* Dkt. 134 at 12.  In *Finjan*, the Federal Circuit *affirmed* the admission of expert testimony on licenses, the comparability of which was disputed.  *See Finjan*, 626 F.3d at 1211-12.  Specifically, the Federal Circuit held that "[d]espite potential flaws in Finjan's damages theory, '[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject.'"  *Id.* (quoting *i4i Ltd. P'ship, Infrastructure for Information Inc. v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010)).  The Court should follow the Federal Circuit's guidance in *Finjan* and *i4i* here.

**B.    Dr. Stec's Analysis of the ███████████████ is Admissible.**

WSOU's arguments for exclusion of Dr. Stec's opinions regarding the ████████████████ are substantially similar to its arguments regarding the ███████████████, and fail to support WSOU's Motion for the same reasons.  Specifically, WSOU asserts that the ███████████████

"arises from very different circumstances than the hypothetical negotiation between Alcatel-Lucent and Microsoft.  Mr. Stec also failed to isolate the comparable technology at issue."  Dkt. 134 at 12.  Again, WSOU mischaracterizes Dr. Stec's analysis while failing to provide any legal justification for usurping the jury's role of weighing relevant evidence.

Contrary to WSOU's assertion, Dr. Stec did isolate the "isolate the comparable technology at issue."  WSOU accuses NPS, an implementation of a AAA server, of infringing the '702 patent.  Therefore, in addressing the ███████████, Dr. Stec's report discusses AAA and its use by ████ at length, relying on the technical expertise of Mr. DeKok.  (*See* Stec Rept., Appendix B at 40-41, 50, 53, 55, 58, 88-89.); *see also Intuitive Surgical, Inc. v. Auris Health, Inc.*, No. 18-cv-1359, 2021 WL 3662842, at *4-5 (D. Del. Aug. 18, 2021) (denying patentee's motion to exclude where damages expert "established a baseline comparability between the [] licensed patents and the patents-in-suit" by having "discussions with [the] technical experts" to inform his understanding that the licenses were comparable) (internal quotation marks and citations omitted).

WSOU attacks a strawman in arguing that "it is unrealistic to assume that Brazos and Nokia, respectively, would have had the same bargaining positions."  Dkt. 134 at 13 (citing *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010)).  Dr. Stec does not assume identical bargaining positions, and WSOU has not (and cannot) identify any flawed analysis in Dr. Stec's report based on such as assumption.  *Wordtech* is distinguishable, as in that case, the Federal Circuit's determination that a damages expert's analysis failed to support the verdict was based on the different payment structure between the licenses the expert analyzed and the awarded lump-sum damages.  *See Wordtech*, 609 F.3d at 1320 (finding there was no basis in the evidence for comparison of running royalty agreements

to lump-sum damages).  No such concern exists here, where Dr. Stec has analyzed lump-sum

licenses to reach an opinion as to the appropriate lump sum for the hypothetical license.

WSOU's criticism that Dr. Stec "fails to make any adjustments to account for the value

of the '702 Patent in the ███████████" is misguided, and does not support excluding Dr.

Stec's opinions.  Dkt. 134 at 14.  As noted above, Dr. Stec's report acknowledges that the '702

patent is one of thousands of patents licensed under the ███████████.  Despite the fact that

the license received by ████████████████████ the hypothetical license at issue in this

case, Dr. Stec conservatively did not make any downward adjustment to the royalty amount

based on this consideration, effectively assigning the full value of the ███████████ to the

'702 patent.  (*See* Stec Rept., Appendix B at 45.)

WSOU's discussion of "different circumstances" between the ███████████ and the

hypothetical license, Dkt. 134 at 14-15, also misses the mark.  In particular, WSOU's speculation

as to the "mindsets" of Alcatel-Lucent and █████ should not be credited.  *See id.* at 15.  After

arguing during discovery that materials related to negotiations are not discoverable, and stating

that "the license agreement is what's relevant, not what the dispute was[,]" WSOU cannot now

argue that Dr. Stec is required to adjust his damages analysis based on the undocumented

"mindset" of a licensee rather than the explicit terms of comparable licenses.  In any event, as

discussed with regard to the ███████████ above, any allegedly "different circumstances"

go to the weight of Dr. Stec's testimony, not its admissibility.  WSOU will have the opportunity

to present differences between the ███████████ and the hypothetical license to the jury.

*Cf. Open Text S.A. v. Box, Inc.*, No. 13-cv-4910, 2015 WL 393858, at *5-6 (N.D. Cal. Jan. 29,

2015) (rejecting argument that expert's assessment of comparability "is deficient," as "[a]ny

differences between the licensed patents and the patents-in-suit can easily be pointed out to the jury").[8]

## V.      CONCLUSION

For the foregoing reasons, Microsoft requests that the Court deny WSOU's Motion.


DATED: April 26, 2022                              Respectfully submitted,

                                                   */s/ Richard A. Cederoth (by permission)*

                                                   Melissa R. Smith, Bar No. 24001351
                                                   melissa@gillamsmithlaw.com
                                                   James "Travis" Underwood, Bar No.
                                                   24102587
                                                   travis@gillamsmithlaw.com
                                                   **GILLAM & SMITH, LLP**
                                                   303 South Washington Avenue
                                                   Marshall, Texas 75670
                                                   Tel: (903) 934-8450
                                                   Fax: (903) 934-9257

                                                   Michael J. Bettinger
                                                   mbettinger@sidley.com
                                                   Irene Yang
                                                   irene.yang@sidley.com
                                                   Brooke S. Boll
                                                   brooke.boll@sidley.com
                                                   **SIDLEY AUSTIN LLP**
                                                   555 California Street, Suite 2000
                                                   San Francisco, CA 94104
                                                   Tel: (415) 772-1200
                                                   Fax: (415) 772-7400

                                                   Richard A. Cederoth
                                                   rcederoth@sidley.com

---

[8] *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2607882 (E.D. Tex. May 25, 2017), relied upon by WSOU, Dkt. 134 at 15, is not to the contrary.  In *Biscotti*, the court expressly acknowledged that the economic differences between the allegedly comparable "HDMI licenses" and the hypothetical license were "due to the fact that the HDMI licenses are standard essential[.]"  *Biscotti*, 2017 WL 2607882, at *4.  *Biscotti*'s narrow holding does not apply here, where standard-essential patents are not at issue.

John W. McBride
jwmcbride@sidley.com
Richard M. Chen
rchen@sidley.com
Kevin Robert Oliver
kevin.oliver@sidley.com
**SIDLEY AUSTIN LLP**
1 South Dearborn St.
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

***ATTORNEYS FOR MICROSOFT***
***CORPORATION***

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin Robert Oliver, certify that on April 26, 2022, the documents filed with the Clerk of Court via the Court's CM/ECF system under seal in the above-captioned cases were subsequently served on all counsel of record by electronic mail.

DATED: April 26, 2022

<u>/s/ *Kevin Robert Oliver*</u>

Kevin Robert Oliver
kevin.oliver@sidley.com
**SIDLEY AUSTIN LLP**
1 South Dearborn St.
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

***ATTORNEY FOR MICROSOFT
CORPORATION***